UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
07-61389-CIV-COHN/SELTZER

MERRILL-STEVENS YACHT SALES, LLC,
a Florida Corporation, as successor in interest
To Koch, Newton and Partners,

    Plaintiff,
v.

Fr. LÜRSSEN WERFT, GmbH & Co. KG,
 <u>in personam</u>,

    Defendant.
_____/

## **ORDER AFFIRMING MAGISTRATE JUDGE SELTZER'S MAY 15, 2008 ORDER**

**THIS CAUSE** is before the Court upon Defendant's Rule 72(A) Objection to Order Denying Motion for Protective Order Regarding Notice of 30(b)(6) Deposition [DE 85] ("Objection"), Plaintiff's Response [DE 94] ("Response") and Defendant's Reply [DE 99] ("Reply").  The Court has considered the Objection, Response, Reply, the pertinent portions of the record, and is otherwise fully advised in the premises.

### I. BACKGROUND

Plaintiff Merrill-Stevens Yacht Sales, LLC ("Merrill Stevens") provides worldwide yacht brokerage services to various entities such as yacht purchasers, sellers, builders, and manufacturers. Plaintiff asserts four causes of action against Defendant, a German entity and manufacturer of Lürssen yachts: Breach of Contract (Count I); Quantum Meruit (Count II); Unjust Enrichment (Count III); and Tortious Interference with a Business Relationship (Count IV).  Merrill Stevens is the successor in interest to the assets of Koch, Newton and Partners, where Guilio Riggio was employed as a broker.

Plaintiff's claims arise from the allegation that "Dr. Kulczyk informed Mr. Riggio that he had in fact entered into a contract for the construction of a vessel, to be built by Defendant Lürssen at the Lürssen shipyard" and "[n]either Mr. Riggio, nor his brokerage house was paid any commission as a result of these brokerage services." (Second Amended Complaint, DE 23, p. 4.)

The focus of the present discovery dispute is Count IV for Tortious Interference where Plaintiff avers that "Defendant Lürssen intentionally and unjustifiably interfered with the longstanding business relationship between Dr. Kulczyk and Merrill Stevens, by causing Dr. Kulczyk to disassociate Merrill Stevens and Mr. Riggio from the new construction through misrepresentations and financial incentives." (Second Amended Complaint, DE 23, p. 6.)  As a result, Merrill Stevens alleges that it has been damaged in the amount of 5% of the gross price of the new vessel construction. (Id.)  Plaintiff also seeks punitive damages for the intentional tort.  (Id.)

Discovery is ongoing and has been quite contentious.  Plaintiff provided Defendants with a Fed.R.Civ.P. 30(b)(6) Notice regarding six areas of inquiry. (Notice of Taking Rule 30(b)(6) Deposition, DEs 55, 82, 83.)  Defendant contested the issues outlined and sought a protective order from the Magistrate Judge to prohibit Plaintiff from asking questions concerning:

> 2.  All transactions and all communications between any people related to or connected with the construction and/or sale of the M/Y "Phoenix" from (a) Lurssen to Phoenix Marine, Ltd. (DeGeorge entity) . . .
> \*\*\*
> 6.  Any and all sales/transactions consummated or completed for new vessels built by Luerssen (sic) in which Rob Moran or Moran Yacht & Ship, Inc., were involved.

(Objection, DE 85, p. 2.) Defendant argues that the information sought involved

proprietary, confidential and trade secret information that would harm Defendant's business and reputation if disseminated. (Id., at 4). Magistrate Judge Seltzer determined that Defendant had not established adequate cause to preclude Plaintiff from examining its corporate representative on the disputed topics because the topics "will reveal information related to Defendant's routine business practices and financial motivations," and therefore the topics are "relevant or are reasonably calculated to lead to the discovery of admissible evidence regarding (at the very least) Plaintiff's claim against Defendant for tortious interference." (Order, DE 84, p. 5.) However, as a protection against any possible harm to Defendant, Magistrate Judge Seltzer directed the parties to draft a Joint Proposed Confidentiality Order. (Id., at 5,7.) Judge Seltzer concluded that "the information sought is both relevant and necessary to the action and, further, Plaintiff's need for this information outweighs the speculative harm to Defendant from its disclosure." (Id., at 6.)

Defendant objects to Magistrate Judge Seltzer's Order arguing that it is clearly erroneous, an abuse of discretion and contrary to the law because: (1) the Confidentiality Order will not protect Defendant from irreparable harm of disclosure in this case, and (2) the information sought is not relevant, not reasonably calculated to lead to admissible evidence and contrary to established federal law.

## II. ANALYSIS

A party may object to a Magistrate's order but the order will not be modified or set aside unless it is "clearly erroneous or is contrary to law." Fed.R. Civ.P. 72(a); 28 U.S.C. § 636 (b)(1)(A); Local Magistrate Rule 4(a)(1). A finding is clearly erroneous if "the reviewing court, after assessing the evidence in its entirety, is left with a definite

3

and firm conviction that a mistake has been committed." Krys v. Lufthansa German Airlines, 119 F.3d 1515, 1523 (11th Cir. 1997). "The mere fact that a reviewing Court might have decided the issue differently is not sufficient to overturn a decision when there are two permissible views of the issue." Pendlebury et al. v. Starbucks Coffee Co., Case No. 04-80521, 2007 U.S. Dist. LEXIS 94813, at *2 - 3, (S.D.Fla. December 28 2007) (Marra, J.).

Pursuant to Federal Rule of Civil Procedure 26(c)(1), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . .." This protective order may require "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way. . .." Fed.R.Civ.P.26(c)(1)(G).

As Magistrate Judge Seltzer correctly stated, "a party seeking to shield its trade secrets or other commercial information must establish that the information sought to be protected is confidential and that its disclosure might be harmful. The burden then shifts to the party seeking disclosure to establish that discovery of the confidential information is relevant and necessary to the action." (Order, DE 84, p. 4.) The Court's role is to balance "the need for protection of the trade secrets against the claim of injury resulting from disclosure." Empire of Carolina, Inc. v. Mackle, 108 F.R.D. 323, 326 (S.D. Fla. 1985) (Marcus, J.).

**A. Potential Harm to Plaintiff**

Magistrate Judge Seltzer's Order required the parties to jointly confer and submit a Confidentiality Order which would govern the contested material. Defendant maintains that no confidentiality order could protect it because "once the information is

disclosed to Plaintiff, the harm is immediate and irreparable" and "the Order does nothing to prevent Plaintiff's anticipated harassment of Defendant's customers who are not involved in the case." (Reply, DE 99, p. 3-4.) Additionally, Defendant argues that Plaintiff could solicit customers of Defendant; that there would be no way to enforce the Order after disposition of this case; and that Plaintiff could subpoena records from the purchasers involved in other transactions or even depose these individuals. (Objection, DE 85, p. 6.)

What Defendant fails to address is the fact that the Court left it up to the parties to craft a confidentiality order that would establish the parameters for how the information sought would be handled.  Therefore, the confidentiality order could have encompassed any or all of the concerns raised by Defendant, and the Court is unpersuaded that no suitable confidentiality order could have been crafted.

The Plaintiff's proposed Confidentiality Order does provide significant protections for Defendant.[1]  It states that "Confidential Information shall not be used, exhibited or disclosed in whole or in part for any purposes other than the litigation of this action. . ." Confidentiality Order[2], DE 87-2, p. 3.  Additionally, any disclosure of Confidential

---

[1] In spite of Defendant not participating in the drafting of the Confidentiality Order, and their argument that it is woefully inadequate, Defendant appears to have conceded that Plaintiff's Confidentiality Order would govern if the Court affirms the Magistrate's Order.  (See Response, DE 94, p. 4 "The Defendant failed to make any comments to the proposed Confidentiality Order and in accordance with the orders of the Court and the [sic] Plaintiff was forced to unilaterally file its proposed Confidentiality Order with the Court . . .The Defendant has since agreed that should the Court deny its instant Objection that the proposed order submitted to the Court would control.")

[2] The document is titled "Stipulated Protective Order" but the parties and the court refer to this documents as the Confidentiality Order.

Information, must be for purposes of the litigation, and anyone receiving the information must sign a document agreeing to be subject to the Confidentiality Order and the jurisdiction of the court.  Id. at p. 3, 7.   Therefore, neither the Plaintiff nor any entity to whom Plaintiff provides the information, may use the information for any competitive advantage or solicit Defendant's customers.  The use of the information by anyone is limited to the litigation.  Defendant argues that this is not sufficient because the jurisdiction of the Court could be disputed by foreign nationals.  However, Defendant had the opportunity to participate in the drafting of the Confidentiality Order and could have proposed different language.  Defendant chose not to participate.

      Defendants cite Murata Mfg. Co., Ltd., v. Bel Fuse, Inc., Case no. 03 C 2934, 2004 U.S.Dist. LEXIS 9771, (N.D.Ill. May 25, 2004), for the proposition that Defendant could be subject to irreparable harm if Plaintiff could subpoena records from or contact Defendant's customers not involved in litigation.  (Objection, DE 85, p. 6 - 7.)   In Murata, the Court was addressing a "Motion to Compel Bel Fuse, Inc.  to Produce Documents Identifying Customers" and Defendant's corresponding "Motion for Protective Order that Defendant Not Be Required to Identify its Customers and to Preclude Plaintiff from Discussing this Litigation with Defendant's Customers."  Id., at *2.  The parties had a Confidentiality Order in place and Defendant was willing to disclose the identities of its ICM customers but sought to prohibit Murata from subpoenaing or otherwise contacting the customers. See Murata, 2004 U.S. Dist. LEXIS 9771, at * 8, fn 3. The Court issued a protective order that Plaintiff not contact any of Defendant's customers because the Court found that there was a significant risk that customer relationships would be disrupted should Plaintiff be allowed to contact

them, and Plaintiff had alternative evidence it could use.  Murata, 2004 U.S. Dist. LEXIS 9771, at * 19-21.

Here, the Court is faced with a much different situation.  The issue before the Court is a Rule 30(b)(6) deposition of Defendant's corporate representative wherein Plaintiff seeks to limit any inquiry into other transactions.  At this stage in the discovery process, the Court is unaware of any subpoenas being issued or attempts to contact any customers.  The Rule 30(b)(6) Notice simply alerts Defendant that counsel anticipates asking questions concerning other transactions and the corporate representative produced for the deposition should, therefore, have knowledge of the subject matter.  At this point, Defendant has provided no information as to other transactions or customers and Defendants' focus on later aspects of potential discovery is premature.[3]  This is in contrast to Murata which did not deal with an argument to limit deposition testimony but to limit contact with customers Defendant was willing to disclose. Murata, 2004 U.S. Dist. LEXIS 9771, at * 8, fn 3.

As noted in the Magistrate's Order, the corporate deposition process should operate extrajudicially and is not intended to be fundamentally different from any other witness or party deposition.  (Order, DE 84, p. 4, fn 7 citing New World Network, Ltd. v.

---

[3] Defendant argues that the Confidentiality Order does nothing to prevent "Plaintiff's anticipated harassment of Defendant's customers who are not involved in the case." (Reply, DE 99, p. 4.) At this stage, the Court is unaware of any contact with customers.  However, Defendant argues that "[c]ounsel for Plaintiff. . . has advised Counsel for Defendant that it would use the information sought to approach individual owners in order to ascertain whether . . . Moran had taken clients from other brokers, not parties to this case." ( Id.)  Again, this is not an aspect of the Rule 30(b)(6) Notice which is before the Court.  The Notice simply outlines areas of inquiry for the corporate representative.  Should later issues develop which are not covered by the Confidentiality Order, the parties may seek Court intervention.

M/V Norwegian Sea, Case No. 05-22916, 2007 WL 1068124, at *2 (S.D. Fla. April 6, 2007).) The Court is unpersuaded that no confidentiality order could have been crafted to alleviate the concerns of Defendant, Defendant was provided with the opportunity to participate in the drafting of such an order and the present Confidentiality Order provides significant protections. Thus the Court finds that Magistrate Judge Seltzer's Order was not clearly erroneous or contrary to law.

### B. Relevance

Relevance is very broad and "discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought has no possible bearing on the claims and defenses of the parties or otherwise on the subject matter of the action." Jeld-Wen, Inc. v. Nebula Glass Int'l, Inc., No. 05-60860-CIV, 2007 WL 1526649, at *1 (S.D. Fla. May 22, 2007). Magistrate Judge Seltzer concluded that, "the first two topics of inquiry at issue will reveal information related to Defendant's routine business practice and financial motivations. . .[and] these areas of inquiry, therefore, are relevant or are reasonably calculated to lead to the disclosure of admissible evidence regarding (at the very least) Plaintiff's claim against Defendant for tortious interference."  (Order, DE 84, p. 5.)

Plaintiff argues that the issues outlined for questioning in the deposition relate to the tortious interference with a business relationship claim because the information goes "directly to the heart of whether the Defendant's acts were (a) intentional and/or (b) justifiable under the circumstances."  (Response, DE 94, p. 2.)  Defendant appears to argue that the information sought goes more specifically to Plaintiff's already dismissed RICO claim and that information concerning Defendant's other sales and

8

transactions involving Rob Moran do not have a bearing on the claim of whether Defendant intentionally or unjustifiably interfered with Plaintiff and Dr. Kulczyk. (Objection, DE 85, p. 7-8; Reply, DE 99, p. 5 - 8.)

In its Objection, Defendant cites a number of federal cases it claims "prohibits parties seeking discovery regarding other unrelated transactions that are not at issue in the complaint" and argues that these cases were (a) not applied and (b) not addressed in the Magistrate Judge's Order. (Response, DE 85, p. 8.)  As an initial matter, none of these cases referred to are from the 11th Circuit, all were issued well before the 2000 revisions to the Federal Rules of Civil Procedure and most do not deal with objections to a Rule 30(b)(6) deposition.  Therefore, at a minimum, the cases are not binding precedent on this Court.  Additionally, the Court is unpersuaded that in this action, the other transactions are necessarily unrelated.  The other transactions could indeed shed light on the Defendant's business practices and the alleged tortious interference.

Other cases cited by Defendant deal with issues unrelated to whether areas of inquiry in a Rule 30(b)(6) deposition are relevant to Plaintiff's case.  See Oppenheimer Fund, Inc. v. Sanders, 427 U.S. 340, 363 (1978)(dealing with Rule 23(d) in a Class Action);  Marshall v. Westinghouse Electric Corp., 576 F.2d 588, 592 (5th Cir. 1978) (interrogatories sought information about 7,500 employees in thirty-two districts and three manufacturing plants and was too oppressive and unduly burdensome).

Defendant argues that "[e]ven presuming Plaintiff had sufficient facts to demonstrate prior instances of intentional interference with other brokers, evidence regarding those transactions would be inadmissible under F.R.E. 406 and Rule 403 where they would not be 'sufficiently regular or . . .sufficiently similar to outweigh the

9

danger . . . of prejudice and confusion. . .'" (Reply , DE 99, p. 9, fn 4,  quoting G.M. Brod & Co., Inc. v. U.S. Home Corp., 759 F.2d 1526, 1533 (11th Cir. 1985).)   In GM Brod, "Brod called witnesses Odom and Sierra for the purpose of establishing Home's malicious intentions by showing that Home had a general policy of breaching contracts with small businesses in order to maximize its advantage and profit." Id., at 1532. However, the Court determined that it was error to admit collateral evidence of routine practice because:

> It is only when the examples offered to establish such pattern of conduct or habit are "numerous enough to base an inference of systematic conduct" and to establish "one's regular response to a repeated specific situation" or, to use the language of a leading text, where they are "sufficiently regular or the circumstances sufficiently similar to outweigh the danger, if any, of prejudice and confusion," that they are admissible to establish a pattern or habit.

The situation faced by the GM Brod Court is radically different than this Court is facing. Defendant is skipping over the first step.  How can the Court determine if the other transactions are sufficiently regular or sufficiently similar if Defendant is seeking to prohibit deposition questioning into their existence?  Additionally, the fact that examples to establish a pattern of conduct or habit could establish a regular response to a repeated specific situation only bolsters Plaintiff's argument that the issues outlined for questioning in the deposition "endeavor to discover facts and circumstances surrounding other deals in which Rob Moran was involved in an effort to establish a regular business practice of Lurssen." (Response, DE 94, p. 2.)

Therefore, how Defendant conducts its business and its use of Mr. Moran could indeed lead to the discovery of admissible evidence regarding Plaintiff's claim for tortious interference.   It is not clear that the areas of inquiry "ha[ve] no possible bearing

on the claims and defense of the parties or otherwise on the subject matter of the action." Jeld-Wen, No. 05-60860-CIV, 2007 WL 1526649, at *2.

The Court finds that the Magistrate Judge's Order was not clearly erroneous or contrary to the law.   It is therefore

**ORDERED AND ADJUDGED** that Defendant's Objection [DE 85] are **OVERRULED**, and Magistrate Judge Seltzer's Order of May 15, 2008, is **AFFIRMED**.[4]

**DONE AND ORDERED** in Chambers at Ft. Lauderdale, Florida this 2nd day of July, 2008.

JAMES I. COHN
United States District Judge

Copies to counsel of record on CM/ECF

---

[4] In the alternative to setting aside the Magistrate Order, Defendant requests that the Court "stay ruling on the present matter pending the Court's determination on the applicable law in this matter." (Reply, DE 99, p. 10.)  The Court declines this alternative remedy.  There is currently no pending, ripe motion regarding any dispute as to the applicable law.